**Opinion issued August 8, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00833-CV

————————————

**SCOTT GALE, Appellant**

**V.**

**RIZWAN CHAUDHRY, ADVANCED HOUSTON SURGICAL, PLLC, AND HILLCROFT MEDICAL CLINIC ASSOCIATION, P.A., Appellees**

---

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Case No. 22-CV-0212**

---

## MEMORANDUM OPINION

Scott Gale appeals from the trial court's judgment dismissing with prejudice his health care liability claims against Rizwan Chaudhry, Advanced Houston Surgical, PLLC, and Hillcroft Medical Clinic Association, P.A. On appeal, Gale

argues that the trial court erred by determining that the expert was not qualified and that Gale failed to serve an adequate report. We affirm.

## Background

In his petition, Gale states that he received a bilateral inguinal hernia repair surgery with mesh from Dr. Chaudhry. Gale alleges that Dr. Chaudhry improperly allowed the cord structures of his left testicle to twist, which resulted in painful testicular torsion. Gale states that his testicles turned black. Gale alleges that Dr. Chaudhry was notified of the testicular torsion three days after the surgery and failed to send Gale to an emergency room or to a urologist for further evaluation. Gale argues that, as a result, he was forced to have surgery that removed his left testicle.

According to Gale, Dr. Chaudhry's negligent acts caused his injuries and damages. He also asserts that appellees Hillcroft Medical Clinic Association, P.A. and Advanced Houston Surgical PLLC are vicariously liable for Dr. Chaudhry's negligent acts and omissions.

In accordance with the Texas Medical Liability Act (TMLA),[1] Gale timely served upon the appellees a medical expert report authored by Don M. West, M.D. In his report, Dr. West states that he has 33 years of experience in medicine. He attached his curriculum vitae which states that he received a medical degree from

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 7.001–.507.

2

University of Texas Health Science Center at San Antonio. He did an internship and completed his residency at Baylor University Medical Center. He is a Diplomate of the American Board of Physical Medicine and Rehabilitation. He lists that he is the attending physician in the pain management/musculoskeletal injury program at One Medical in Sherman, Texas and maintains a private practice in musculoskeletal pain medicine. Before forming his opinions related to Gale, Dr. West reviewed Gale's records from Dr. Chaudhry as well as from Adult and Pediatric Urology of Houston, LLP.

As to the standard of care, Dr. West stated that Dr. Chaudhry had a duty to refrain from cutting off blood circulation to Gale's testicle during the hernia repair surgery. Dr. West opines that Dr. Chaudhry failed to uphold this standard by cutting off circulation to Gale's left testicle during the procedure. As a result, the testicle lost blood flow and needed to be removed.

The appellees objected to the expert report and moved to dismiss Gale's claims. They alleged that Dr. West, as a physiatrist, was not qualified to render opinions on the standard of care and breach by a surgeon treating a surgical patient. They alleged that the report did not adequately describe the required standard of care, breach, or causation. After a hearing, the trial court held that Dr. West was qualified to produce an expert report but that the report was lacking in detail. The court ordered that Gale cure the deficiencies by providing a more detailed report.

3

Gale filed a supplemental report from Dr. West with additional language regarding his qualifications, including that he has "become familiar with invasive procedures such as epidural steroid injections and other invasive procedures." He stated that through his experience and training he is aware of the "importance of avoiding blood vessels transporting blood to important organs."

The appellees objected to the supplemental report on the grounds that Dr. West was unqualified to offer opinions on the medical treatment performed by Dr. Chaudhry and that the report did not adequately discuss the standard of care, breach, or causation. After a hearing, the trial court sustained the appellees' objections to the supplemental report and dismissed Gale's claims with prejudice. Gale appealed.

### Standard of Review

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We apply the same standard to a trial court's determination of whether an expert is qualified. *See Broders v. Heise*, 924 S.W.2d 148, 151–52 (Tex. 1996); *Whitmire v. Feathers*, No. 01-19-00094-CV, 2020 WL 4983321, at *8 (Tex. App.—Houston [1st Dist.] Aug. 25, 2020, no pet.) (mem. op.). A trial court "abuses its discretion if it acts in an

arbitrary or unreasonable manner without reference to any guiding rules or principles." *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). "When reviewing matters committed to [a] trial court's discretion, [we] may not substitute our own judgment for that of the trial court." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). "A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance." *Harris Cnty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet). However, a trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). "In conducting our review, we always bear in mind that the Legislature's goal in requiring expert reports was to deter baseless claims, not block earnest ones." *Whitmire*, 2020 WL 4983321, at *8; *see also Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011) ("The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits.").

### Sufficiency of Expert Report

On appeal, Gale argues that the trial court erred in dismissing his health care liability claims against the appellants because Dr. West is qualified to render an expert opinion, and the expert report adequately addressed the standard of care, causation, and breach.

5

Under the TMLA, a plaintiff asserting health care liability claims must timely serve each defendant physician with at least one expert report, with a CV for the expert whose opinion is offered, to substantiate the merits of the plaintiff's claims. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a), (i); *see also Mangin v. Wendt*, 480 S.W.3d 701, 705 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The expert report must provide a "fair summary" of the expert's opinions regarding (1) the applicable standard of care, (2) the manner in which the care rendered by the defendant physician or health care provider failed to meet the standard of care, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6); *see also Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013). A fair summary of the expert's opinions means that, at the least, the report must state more than the expert's mere conclusions as to the standard of care, breach, and causation; it must instead explain the basis of the expert's opinion to link the conclusions to the facts of the case. *See Jelinek*, 328 S.W.3d at 539; *Wright*, 79 S.W.3d at 52.

If a plaintiff timely serves an expert report and a defendant physician or health care provider files a motion challenge the adequacy of that report, then the trial court may only grant the motion "if it appears to the court, after [a] hearing, that the report does not represent an objective good faith effort to comply with the [TMLA's] definition of an expert report." TEX. CIV. PRAC. & REM. CODE

6

§ 74.351(l); *Baty v. Futrell*, 543 S.W.3d 689, 692–93 (Tex. 2018) (internal quotations omitted); *see also* TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6) ("'Expert report' means a written report by an expert that provides a summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.").

An expert report qualifies as an "objective good faith effort" to avoid dismissal if it discusses each element with sufficient specificity so that it (1) informs the defendant physician or health care provider of the specific conduct that the plaintiff questions or about which the plaintiff complains and (2) provides a basis for the trial court to conclude that the plaintiff's health care liability claim has merit. *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017) (internal citations and quotations omitted); *see also Baty*, 543 S.W.3d at 693–94. The expert report is not required to use any particular words, and it may be informal, "but bare conclusions will not suffice." *Scoresby*, 346 S.W.3d at 555–56.

In determining whether an expert report constitutes an "objective good faith effort" to address each element, "a trial court may not draw inferences; instead, it must exclusively rely upon the information contained within the four corners of the

report." *Puppala v. Perry*, 564 S.W.3d 190, 197 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Cornejo v. Hilgers*, 446 S.W.3d 113, 121 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)). And when the issue of adequacy hinges on an expert's qualifications, the trial court may also consider the "four corners" of the expert's CV. *Puppala*, 564 S.W.3d at 197; *see also Mangin*, 480 S.W.3d at 706. Courts must view the report in its entirety, rather than isolating specific portions or sections, to determine whether it is sufficient. *Baty*, 543 S.W.3d at 694; *see Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 144 (Tex. 2015). "In reviewing the adequacy of an expert report, a trial court may not consider an expert's credibility, the data relied upon by the expert, or the documents that the expert failed to consider at this pre-discovery stage of the litigation." *Whitmire*, 2020 WL 4983321, at *10.

**A. The trial court did not err in holding that the expert was not qualified to opine on Gale's treatment.**

Gale argues that the trial court erred in sustaining the appellees's objections to Dr. West's expert report and granting their motion to dismiss Gale's health care liability claims because Dr. West is qualified to render an expert opinion on the issue of causation of Gale's injuries.

An expert report by a person not qualified to testify does not constitute a good-faith effort to comply with the TMLA's definition of an expert report and warrants dismissal. *See Mettaure v. Noble*, 326 S.W.3d 685, 693 (Tex. App.—

Houston [1st Dist.] 2010, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE § 74.351(l), (r)(6). Whether an expert witness is qualified to offer an expert opinion lies within the sound discretion of the trial court. *Cornejo*, 446 S.W.3d at 121. "The expert's qualifications must appear within the four corners of the expert report or in the expert's accompanying CV." *Whitmire*, 2020 WL 4983321, at *10; *see also Cornejo*, 446 S.W.3d at 121.

"Not every licensed physician is qualified to testify on every medical question." *Cornejo*, 446 S.W.3d at 121. Yet a physician need not practice in the field about which he is testifying so long as he can demonstrate that he is qualified to opine on the specific issue before the court. *Whitmire*, 2020 WL 4983321, at *11.

In his CV, Dr. West states that he is the attending physician in the pain management/musculoskeletal injury program at One Medical in Sherman, Texas and maintains a private practice in musculoskeletal pain medicine. Dr. West states that he has practiced medicine for 34 years. His report states that through his practice of medicine, he has "become familiar with invasive procedures such as epidural steroid injections and other invasive procedures." He states that through this experience, he is "well aware of the importance of avoiding blood vessels transporting blood to important organs."

While it appears from his CV that Dr. West is actively practicing medicine, his CV and reports do not demonstrate substantial training or experience in hernia treatment and surgical repair or surgery in general. *See* TEX. CIV. PRAC. & REM. CODE § 74.401. The statement that he is familiar with "epidural steroid injections" and "other invasive procedures" does not demonstrate that he has any familiarity with interoperative surgical procedures or hernia repair surgery. Nor does his report state that he has ever treated a patient with a hernia, surgically or otherwise.

While a physician need not be a specialist in the defendant's particular area of practice, Dr. West's report and CV do not establish his relevant experience related to Gale's claims. *See Mangin*, 480 S.W.3d at 701 (stating anesthesiologist could not opine on standard of care applicable to cardiothoracic surgeon for anesthesia-based injury because although injury related to expert's specialty, he had no training in cardiothoracic field). He does not state that he has experience with surgery. Dr. West states that he is familiar with invasive procedures and epidural steroid injections, but he does not explain how either of these relates to Gale's hernia repair surgery.

Reviewing Dr. West's CV, his first expert report, and the supplemental report, we conclude that Gale failed to meet his burden to show that Dr. West had the qualifications to provide an expert opinion for his health care liability claims.

10

The trial court did not err in dismissing Gale's claims based on his failure to produce an expert report from a qualified physician.

**B. The trial court did not err in holding that the expert report was inadequate as to standard of care and breach.**

Gale argues that the trial court erred in concluding that Dr. West's expert report did not adequately address the standard of care and breach of the standard of care.

As stated above, an expert report must provide a fair summary of the expert's opinions regarding (1) the applicable standard of care, (2) the manner in which the care rendered by the defendant physician failed to meet the standard of care, and (3) the causal relationship between the failure and the injury, harm, or damages claimed. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6).

Identifying the standard of care in a health care liability claim is critical. *Palacios*, 46 S.W.3d at 880. To adequately identify the standard of care, an expert report must set forth "specific information about what the defendant should have done differently." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 226 (Tex. 2018) (internal quotation and citation omitted). Related to standard of care and breach, the expert report must explain what the defendant physician should have done under the circumstances and what the physician did instead. *Palacios*, 46 S.W.3d at 880; *see also Kline v. Leonard*, No. 01-19-00323-CV, 2019 WL 6904720, at *7 (Tex. App.—Houston [1st Dist.] Dec. 19, 2019, pet. denied) (mem.

11

op.) ("[A]n expert report must provide a fair summary of the expert's opinion regarding the applicable standard of care and the manner in which the care rendered by the health care provider failed to meet the standard." (internal quotations omitted)). It is not sufficient for the expert to simply state that he knows the standard of care and conclude that it was or was not met. *Palacios*, 46 S.W.3d at 880.

As to the standard of care, Dr. West's reports state that Dr. Chaudhry had a duty to refrain from cutting off blood circulation to Gale's testicle "during the procedure in question." He continues that medical professionals are aware of the importance of blood flow to organs and "take great care with vessels carrying blood to important organs." As to breach, he states that Dr. Chaudhry failed to uphold the standard of care by cutting off blood circulation to Gale's left testicle during the procedure.

The expert report is conclusory and vague as to both the standard of care and breach. The report does not provide sufficient information about what Dr. Chaudhry did or failed to do during the procedure. There is no specific information about what occurred during the bilateral inguinal hernia surgery, what was expected of the doctor performing the procedure, or what he should have done differently to prevent the eventual loss of the testicle.

In *Baty*, the Texas Supreme Court discussed *Lawton v. Joaquin* as an example of an inadequate, conclusory expert report. *Baty*, 543 S.W.3d at 695 (discussing *Lawton v Joaquin*, No. 04-13-00613-CV, 2014 WL 783340, at *3 (Tex. App.—San Antonio Feb. 26, 2014, pet. denied) (mem. op.)). *Lawton* concerned the vague allegation that a surgeon failed to preserve the blood supply to an organ. *Id.* The inadequate expert report stated that the standard of care applicable to a surgeon conducting an abdominoplasty required preservation of a sufficient blood supply to the abdominal wall. *Id.* The plaintiff's expert report failed to explain "how a surgeon goes about preserving a sufficient blood supply or how the defendant physician failed to do so." *Baty*, 543 S.W.3d at 695 (quoting *Lawton*, 2014 WL783340, at *3). Similarly, Gale alleges that Dr. Chaudhry failed to preserve blood flow to his testicle during hernia repair surgery. Like in *Lawton*, Dr. West's report does not explain how a surgeon should have preserved blood supply to the testicle during hernia surgery or how Dr. Chaudhry failed to do so. The trial court did not abuse its discretion in holding that the expert report was insufficient as to the standard of care and breach.

C. **The trial court did not err in holding that the expert report as inadequate as to causation.**

Gale argues that the trial court erred by sustaining the appellee's objections to Dr. West's report and granting their motion to dismiss Gale's health care

liability claim because Dr. West's report does not adequately address causation. Gale asserts that Dr. West's opinion as to causation is not conclusory.

An expert report must provide a "fair summary" of the expert's opinions regarding the causal relationship between the failure of a defendant physician to provide care in accord with the applicable standard of care and the claimed injury, harm, or damages. TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). For causation, the expert report must explain how and why the defendant physician's breach proximately caused the plaintiff's injury. *See Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 459–60 (Tex. 2017). "An expert report need not marshal all the plaintiff's proof necessary to establish causation at trial, and it need not anticipate or rebut all possible defensive theories that may ultimately be presented to the trial court." *Cornejo*, 446 S.W.3d at 123; *see Wright*, 79 S.W.3d at 52.

There are two components of causation: (1) cause-in-fact and (2) foreseeability. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). A physician's breach was a cause-in-fact of the plaintiff's injury if the breach was a substantial factor in bringing about the harm, and without the breach the harm would not have occurred. *See id.* "In determining whether an expert's causation opinion[] [is] conclusory, we must remain mindful that expert-report challenges are made at an early, pre-discovery stage in the litigation, not when the merits of the

14

health care liability claim are being presented to the factfinder to determine liability." *Puppala*, 564 S.W.3d at 198. An expert report must simply include an "explanation tying the conclusion to the facts" and showing "how and why the breach caused the injury based on the facts presented." *Jelinek*, 328 S.W.3d at 539–40.

As to causation. Dr. West's original report states, "As a result of Dr. Rizwan Chaudhry's failure to uphold the standard of care, Mr. Scott Gale's testicle lost blood flow and was removed." The supplemental report elaborates:

> When organs lose blood flow and oxygen, they will turn black and die. Once an organ is dead, typically the damage cannot be reversed. When Dr. Rizwan Chaudhry cut blood flow to Mr. Scott Gale's left testicle, the testicle lost blood flow and oxygen. Thus, the testicle turned black and died. Mr. Scott Gale's records note that he felt an immense amount of pain as a result. The records further note that Mr. Scott Gale underwent an orchiectomy, or testicle removal. The testicle was removed because it was dead. Thus, the loss of blood flow caused the testicle to turn black and die. The dead testicle caused an immense amount of pain to Mr. Scott Gale. The dead testicle had to be removed and could not be healed. Thus, because Dr. Rizwan Chaudhry failed to . . . . [sic]"

The report ends without a conclusion.

Dr. West's report states that Dr. Chaudhry "cut blood flow" to Gale's testicle, but the report provides no basis for that conclusion. While Dr. West discusses what happens once a testicle loses blood flow, he fails to describe how Dr. Chaudhry caused the loss of blood flow during the hernia surgery. While Dr. West explains what happens once the injury occurs, once the testicle lost blood

flow, he fails to opine as to what Dr. Chaudhry did or did not do that caused it in the first place. Likewise, Dr. West does not rule out other potential causes of the loss of blood flow to attribute the injury to Dr. Chaudhry's action or inactions. Dr. West did not link his conclusions to the facts. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52. The trial court did not err in granting the appellees' motion to dismiss based on Gale's failure to submit an adequate expert report as to causation.

## Conclusion

We affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.